UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| C P | CASE NO. 2:24-CV-01615 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| SOCIETY FOR THE ROMAN CATHOLIC DIOCESE OF LAKE CHARLES | MAGISTRATE JUDGE LEBLANC |

### MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 9] filed under Federal Rule of Civil Procedure 12(b)(6) by defendant Society for the Roman Catholic Diocese of Lake Charles. Plaintiff opposes the motion. Doc. 16. Louisiana Attorney General Liz Murrill has also filed an amicus brief in support of plaintiff. Doc. 19.

### I.
#### BACKGROUND

Plaintiff C.P. filed this clergy sex abuse case in state court on June 14, 2024. Doc. 1. He alleges as follows: In 1996 and 1997, while C.P. was around five years old, he was abused on a weekly basis by a religion teacher named "David" at Sacred Heart Elementary and Sacred Heart Catholic Church. Doc. 5, ¶¶ 5–8. C.P. believes that "David" was a religious brother or a member of the clergy. *Id.* at ¶ 5. Additionally, another faculty member at Sacred Heart Elementary School who was often present in C.P.'s classroom during this period would touch him in a sexually inappropriate manner. *Id.* at ¶ 9. At all relevant times both the church and the school were part of the Society of the Roman Catholic Church of the Diocese of Lake Charles ("Diocese"). *Id.* at ¶ 1.

C.P. raises claims against the Diocese under Louisiana Civil Code articles 2315 and 2316. Such claims would ordinarily be time-barred under Louisiana's one-year prescriptive period governing delictual actions. *See* La. Civ. Code art. 3492. But like many states, Louisiana has made special accommodations for civil claims of child abuse. In 1993 the Louisiana Legislature enacted Louisiana Civil Code article 3498.1, later redesignated as La. R.S. § 9:2800.9, to set a ten-year period of liberative prescription for claims arising from the sexual abuse of a minor.[1] *G.B.F. v. Keys*, 687 So.2d 632, 634 (La. Ct. App. 2d Cir. 1997). These provisions did not apply retroactively, but the Legislature amended the statute in 2021 to provide that such claims did not prescribe and to provide a three-year window for "any party whose action under R.S. 9:2800.9 was barred by liberative prescription prior to the effective date of this Act . . . to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9." 2021 La. Sess. Law Serv. Act 322 (H.B. 492) (WEST). The following year, the Legislature again amended § 9:2800.9 to provide:

> Any person whose cause of action relating to sexual abuse of a minor was barred by liberative prescription shall be permitted to file an action under R.S. 9:2800.9 on or before June 14, 2024. It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period.

2022 La. Sess. Law Serv. Act 386 (H.B. 402) (WEST).

The constitutionality of this provision was challenged before the Louisiana Supreme Court. The court initially agreed that the revival of claims under the 2021 and 2022

---

[1] The period runs from the date the minor reaches the age of majority.

amendments conflicted with the state constitution's due process guarantees. *Bienvenu v. Defendant 1* ("*Bienvenu I*"), 382 So.3d 38 (La. 2024). On rehearing, however, the court reversed course and determined that the recent amendments to § 9:2800.9 were constitutional. *Bienvenu v. Defendant 1* ("*Bienvenu II*"), 386 So.3d 280 (La. 2024). Shortly before that decision was issued the legislature extended the revival window another three years, to June 14, 2027. *See* 2024 La. Sess. Law Serv. Act 481 (S.B. 246) (WEST).

Plaintiff filed this suit within the amendments' window for reviving prescribed claims. The Diocese now moves to dismiss his complaint, arguing (1) that plaintiff's claims are prescribed and/or peremptied on the face of his petition and (2) in the alternative, that the revival of prescribed claims under Act 386 is unconstitutional in several respects. Doc. 9. Plaintiff opposes the motion. Doc. 16. Liz Murrill, Attorney General for the State of Louisiana, has also filed an amicus brief defending the constitutionality of the amendments to § 9:2800.9. Doc. 19.

## II.
## LAW & APPLICATION

### A. Legal Standards

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir.

2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Whether plaintiff's claims are facially prescribed or perempted

The Diocese first argues that, because C.P. attained the age of majority and the prescriptive period ran on his claims under the prior version of § 9:2800.9, his claims are prescribed or perempted.[2] But the plain language of the revival provisions included claims that had prescribed under prior versions of the statute:

> Any person whose cause of action relating to sexual abuse of a minor was barred by liberative prescription shall be permitted to file an action under R.S. 9:2800.9 on or before June 14, 2024. **It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period.**

---

[2] C.P. alleged that the abuse occurred in 1996, when he was five years old. Accordingly, he reached the age of majority at some point in 2009. Under the version of § 9:2800.9 in effect prior to 2021, supra, a ten-year prescriptive period applied to child sex abuse claims and did not begin to run until the victim reached the age of majority. Accordingly, C.P.'s claims became prescribed under this version of the statute in 2019.

2022 La. Sess. Law Serv. Act 386 (H.B. 402) (WEST) (emphasis added). It is the validity of this revival provision that is at issue *infra* and plaintiff's claims cannot be dismissed at a first glance because they were prescribed under a prior version of the statute.

Peremption, on the other hand, "differs from prescription in two respects: (1) the expiration of the peremptive time period destroys the cause of action itself; and (2) nothing may interfere with the running of a peremptive time period." *Conti Enterps., Inc. v. Providence/GSE Associates, LLC*, 377 So.3d 715, 725 (La. Ct. App. 1st Cir. 2023) (citing *Naghi v. Brener*, 17 So.3d 919, 926 (La. 2009)). But as the amicus notes, the Diocese has provided no authority to show that a peremptive period applies to plaintiff's claims. *Cf. Doe v. Soc. of Roman Catholic Church of Diocese of Lafayette*, 389 So.3d 1 (La. Ct. App. 3d Cir. 2023) (revival provisions did not deprive Diocese of a vested right because "only the running of peremption, not prescription, extinguishes a right by operation of law"). Accordingly, the court proceeds to the Diocese's constitutional challenges.

2. **Constitutional challenges**

The Diocese challenges the revival provisions under (1) the Takings Clauses of the Louisiana Constitution and the United States Constitution, (2) the United States Constitution and Louisiana Constitution's prohibition against bills of attainder, and (3) prohibitions under both the Louisiana and United States Constitutions against ex post facto laws. Doc. 9.

a. **Takings Clause**

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment of the United States Constitution, states in relevant part: "[N]or

shall private property be taken for public use, without just compensation." Similarly, the Louisiana Constitution provides:

> (A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
>
> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.

La. Const. art. I, § 4.

The Louisiana Supreme Court acknowledged in *Bienvenu II* the defendant's "substantive property right" in pleading the exception of prescription after the prescriptive period had elapsed on a claim. 386 So.3d at 286. It then tested the revival provisions' infringement on this right against the due process guarantee and found it justified through the statute's rational relationship to a legitimate government interest. *Id.* at 290–91. Louisiana courts have long recognized that such vested interests are protected by due process guarantees under the state constitution. *See Falgout v. Dealers Truck Equip. Co.*, 748 So.2d 399, 407 (La. 1999) ("When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by due process guarantees."); *see also Bourgeois v. A.P. Green Indus., Inc.*, 783 So.2d 1251, 1258–59 (La. 2001) (collecting cases). The Diocese fails to identify any case treating this right as "private property" under the Takings Clause, however. This court will not expand the meaning of property under the state constitution, especially when the

Louisiana Supreme Court has so recently declared that the revival provisions pass muster under the due process analysis traditionally applied to such infringements.

Likewise, federal courts have noted that "property" under the Fifth Amendment's Takings Clause is a term of art "defined much more narrowly than in the due process clauses." *Corn v. City of Lauderdale Lakes*, 95 F.3d 1066, 1075 (11th Cir. 1996) (citing *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995)). This narrow reading comports with the Clause's aim, "to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Eastern Enterps. v. Apfel*, 524 U.S. 498, 522 (1998) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). Indeed, the United States Supreme Court has found the revival of time-barred or prescribed claims constitutional without ever mentioning the Takings Clause. *See Campbell v. Holt*, 115 U.S. 620 (1885); *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304 (1945).

A plurality of the Court recognized in *Eastern Enterprises* that allocation of liability to a former coal operator under a fund for medical expenses of miners and their dependents amounted to a sort of taking. 524 U.S. at 522–23, 538. It based this finding on three factors: "[t]he economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action." *Id.* at 523–24. Weighing these factors, the plurality stated that its decisions "left open the possibility that legislation might be unconstitutional if it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, **and** the extent of the liability is substantially disproportionate to the parties' experience." *Id.* at 528–29 (emphasis added).

Here the Diocese is not being asked to bear a public burden but is instead facing a larger window for previously prescribed claims arising from allegations of sexual assault by members of its clergy against minors. This liability is not disproportionate to its experience; on the contrary, any such cases filed within the window will be fairly adjudicated and the Diocese will only face liability where appropriate under state law. And as emphasized by the court in *Bienvenu II*, the revival provisions serve legitimate public purposes of (1) assisting in the identification of hidden child predators so children will not be abused in the future; (2) shifting the cost of abuse from the victims and society to the perpetrators; and (3) educating the public in order to prevent future sex abuse scandals. 386 So.3d at 291 (citing May 3, 2021 House Bill 492 Hearing, 2021 Reg. Sess., pp. 6–7). To indemnify the Diocese or otherwise shield it from claims brought under the revival provisions would defeat these purposes. Accordingly, the Diocese cannot establish a Takings Clause violation.

      b. **Bills of attainder**

The Diocese also argues that the revival provisions violate constitutional prohibitions against bills of attainder. *See* La. Const. art. I, § 23; U.S. Const. art. I, § 10. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 468 (1977). It reflects "the Framers' belief that the Legislative Branch is not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness of, and levying appropriate punishment upon, specific persons." *Id.* (quoting *United States v. Brown*, 381 U.S. 437, 445 (1965)). "Where

. . . the liability in question clearly attaches by operation of the legislative act alone, the constitutional test may be summarized in the following two-pronged test: First, has the legislature acted with specificity? Second, has it imposed punishment?" *SBC Commc'ns, Inc. v. F.C.C.*, 154 F.3d 226, 233 (5th Cir. 1998).

The Diocese fails at the first step to establish that liability attaches through the revival provisions. The argument that a group is attainted whenever it is compelled to bear burdens it dislikes "removes the anchor that ties the bill of attainder guarantee to realistic conceptions of classification and punishment" and "would cripple the very process of legislating[.]" *Nixon*, 433 U.S. at 470. Again, liability will not attach to the Diocese without the opportunity for a full and fair hearing on any claims brought under the revival provisions. Any such punishments will then be imposed not by the legislative branch but by the courts.

### c. Ex Post Facto Clause

Finally, the United States Constitution forbids states from passing any ex post facto law. U.S. Const. art. I, § 10. This prohibition assures "that legislative acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981). Although the Constitution does not define an ex post facto law, the Supreme Court has set out four categories: (1) a law making criminal, and subject to punishment, an activity that was innocent when originally done; (2) a law aggravating a crime or making it a greater crime than it was when originally committed; (3) a law aggravating a crime's punishment; and (4) a law altering the rules of evidence to require less or different testimony than what was required at the time the crime

was committed, so as to make a conviction easier. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798).

As the amicus notes, the revival provisions apply only to the Diocese's civil liability. The prohibition against ex post facto laws has long been recognized to apply "only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). The Fifth Circuit applies an intents-effect test to determine whether a law imposes "punishment" in violation of the ex post facto clause. *Moore v. Avoyelles Correctional Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001). Under this test, the court looks to (1) whether the legislature intended the sanction to be punitive and (2) whether the sanction is so punitive in effect as to prevent courts from legitimately viewing it as regulatory or civil in nature. *Id.*

Applying a similar test in review of similar revival provisions, the District of New Jersey recently noted that possible liability for monetary damages under the revived claims is not enough to cast them as penal in nature. *Bernard v. Cosby*, 648 F.Supp.3d 558, 572–73 (D.N.J. 2023); *see also Roman Cath. Bishop of Oakland v. Superior Ct.*, 128 Cal. App. 4th 1155, 1165 (2005) ("[A] statute reviving the limitations period for a common law tort cause of action, thereby allowing the plaintiff to seek punitive damages, does not implicate the *ex post facto* doctrine . . . ."); *accord DeLonga v. Diocese of Sioux Falls*, 329 F.Supp.2d 1092, 1102 (D.S.D. 2004). Monetary damages do not restrict a defendant's liberty and even punitive damages are not traditionally viewed as punishment. *Bernard*, 648 F.Supp.3d at 573. The Supreme Court has also recognized that, in contrast to criminal statutes of limitations, the "shelter [of civil statutes of limitations] has never been regarded as . . . a

'fundamental' right" and that they are instead "good only by legislative grace and [] subject to a relatively large degree of legislative control." *Roman Cath. Bishop of Oakland*, 128 Cal. App. 4th at 1161–62 (quoting *Chase Sec. Corp.*, 325 U.S. at 314). The court finds no basis for extending the protections of the ex post facto prohibitions to civil liability statutes in light of the legislature's broad discretion in this area and affirmative findings in favor of the public interest.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 9] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 28th day of February, 2025.

*[signature]*

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**